IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA GREINER, | ) | Civil Action No. 12-1433 |
| Plaintiff, | ) ) ) | Judge Terrence F. McVerry<br>Magistrate Judge Cynthia Reed Eddy |
| v. | ) ) | |
| CAROLYN W. COLVIN<br>Acting Commissioner of Social<br>Security, | ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Acting pursuant to 42 U.S.C. §§ 405(g) and 1383 (c)(3), Patricia Greiner ("Greiner" or "the Claimant") appeals from an August 6, 2012 final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance and supplemental security income benefits. Cross-motions for summary judgment are pending. It is respectfully recommended that the Commissioner's Motion [ECF No. 14] be granted, and that the Claimant's Motion [ECF No. 11] be denied.

### II. REPORT

**Background**

On April 17, 2009, Greiner filed an application for disability insurance benefits under the Social Security Act ["the Act"], and, on the same date protectively filed an application for supplemental security income benefits, claiming an onset date of October 10, 2006. [ECF No. 7-

2 at p. 18].[1] Her last date insured was March 31, 2011, meaning that, for purposes of entitlement to disability insurance benefits, she had to establish disability before that date and after September 23, 2008. [Id.].

Greiner applied for benefits on April 20, 2009, alleging disability on the basis of back pain, the effects of stage II breast cancer, a thyroid condition, and anxiety. [ECF No. 7-7 at p. 7]. Her current claims were denied initially on July 15, 2009 [ECF No. 7-4 at p. 6]. On August 10, 2009, Greiner requested a hearing. The hearing was held on October 13, 2010, before an

---

[1] Greiner filed a prior application for benefits on January 4, 2007. Her request was denied initially on May, 15, 2007. A hearing was held, and the Administrative Law Judge ("ALJ") denied her claims on September 23, 2008. Greiner pursued her claims with the Appeals Counsel, which denied the request for review on November 21, 2008, making the ALJ's decision the final decision of the Commissioner. Greiner did not appeal this decision to the District Court. In section 205(h), the Act adopts the legal doctrine of claim preclusion. See also 20 C.F.R. §§ 404.957(c) (1) and 416.1457(c) (1). Claim preclusion applies under Title II of the Act after there has been a hearing on the merits of a claim. The doctrine of administrative finality is made applicable through 20 C.F.R. §§ 404.987(a) and 416.1487(a). See [ECF No. 7-2 at p. 18]. In his decision with respect to Greiner's current claims, the ALJ wrote:

> If an individual is dissatisfied with a determination or decision made in the administrative review process, but does not [file a timely] request for further review . . . that individual loses his or her right to further review and the [ALJ's] decision becomes final. Reopening a final decision is discretionary and afforded by the Commissioner's regulations and not by the Social Security Act (SSR 77-28c).

[Id.]. The ALJ in the pending matter declined to exercise his discretion to review the prior denial:

> Since no basis exists to reopen the prior claims and claimant's representative did not even attempt to address this issue, the doctrine of res judicata [applies] to the claimant's [current application]. Accordingly, any discussion of the evidence prior to September 23, 2008 is for historical and contextual purposes only and does not constitute de facto reopening.

[Id. at p. 19]. Greiner does not challenge this aspect of the Commissioner's decision.

Administrative Law Judge ("ALJ") in Seven Fields, Pennsylvania. [ECF No. 7-2 at p. 30]. Greiner, who was represented by counsel and a vocational expert testified. [Id.]. At the time of the hearing, Greiner was forty-two years old, and had a high school education. [Id. at p. 35] She had worked in the past as a medical biller, a day-care attendant, and a bartender. [Id. at pp. 38-40].

On December 3, 2010, the ALJ issued a decision finding that Greiner was not disabled. [ECF No. 7-2 at p. 18]. Claimant's request for review was denied by the Appeals Council on August 6, 2012, making the ALJ's opinion the final decision of the Commissioner. [Id. at p. 1]. This timely appeal followed.

## Standard of Review

The Act limits judicial review of the Commissioner's final benefits decision to two issues: whether the factual findings are supported by substantial evidence, Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984). "Where the ALJ's findings of fact are supported by substantial evidence, [the Court is] bound by those findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

## The ALJ's Decision

In his decision, the ALJ applied the sequential five-step analysis [2] articulated at 20 C.F.R.

---

[2] The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, she is not disabled; (2) If the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; (5) Even if the claimant's impairment (or impairments) prevent her from performing her past work, if other work exists in significant numbers

3

§§ 404.1520(a) and 416.920(a). In proceeding through the required steps, the ALJ found that Greiner had not engaged in substantial gainful activity after September 4, 2008, and that she had several severe impairments, including "degenerative disc disease, obesity, and status-post partial mastectomy secondary to breast cancer (20 C.F.R. 404.1520(c) and 416.920(c)." [ECF No. 7-2 at p. 21]. He found that she also "suffered from the medically determinable mental impairments of depression and substance abuse," but that these imposed no more than "minimal limitation in [Greiner's] ability to perform basic mental work activities and [were] therefore nonsevere . . . The record evidence [does] not support a finding that the claimant [has] significant mental health symptoms." [Id.]. In making these findings, the ALJ clarified that he had "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders [found in 20 C.F.R. Part 404, Subpart P, Appendix 1]." [Id.].

As to two areas, activities of daily living and concentration, persistence or pace, the ALJ found that Claimant had mild limitation. [Id.] She was not limited in social functioning. [Id.]. She had not experienced episodes of decompensation of extended duration had had not sought treatment from mental health professionals for her difficulties. Psychotropic medication was prescribed by her primary care physician, Dr. Adrienne Young, but Greiner "only intermittently reported depression and anxiety symptoms." [Id.]. "Dr. Christou, one of claimant's cancer specialists, suggested that she needed to seek psychiatric help for both drug-seeking behavior as well as underlying psychiatric issues." [Id.]. On January 4, 2010, she kept one appointment for a psychiatric evaluation, reporting a depressed mood and decreased concentration. She was diagnosed with depression and abuse of multiple substances, and was assigned a Global

---

in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Assessment of Functioning Score of 55, indicating moderate symptoms. She did not, however, seek additional mental health treatment. Although she told Dr. Young that she would like to be seen at the Staunton Clinic, there was no evidence that she made an appointment there. [Id. at pp. 21-22]. Based on this evidence, the ALJ wrote: "[T]he opinion of Dr. Grant Coyle, the state agency psychologist, that the claimant's impairments were non-severe with only mild limitation in the activities of daily living, no difficulties, in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, is given significant weight." [Id. at p. 22].

At Step Three of the disability analysis, the ALJ concluded that Greiner did not suffer from an impairment or combination of impairments meeting or equaling a listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. 416.920(d), 416.925 and 416.926). [Id.]. Records showed that Greiner did not meet Listing 1.00, which discusses compromise of the Musculoskeletal System. She could ambulate independently, and was able to perform fine and gross motor movements. [Id. at p. 23]. Greiner also failed to meet or equal Listing 13.10, covering Breast Cancer. She did not have a locally advanced carcinoma, did not have metastases to the supraclavicular or intraclavicular nodes or to ten or more axillary nodes, and did not demonstrate distant metastases or recurrent carcinoma. [Id.]

The ALJ stated that in accordance with the relevant regulation, he had considered Greiner's obesity in determining whether her conditions met or equaled the listing criteria, and found that it did not alter his conclusions. Based on "consideration of the entire record," the ALJ found that Greiner had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [she] must be able to sit/stand at her option and can only occasionally balance, crawl, stoop, or bend." [Id.]. He stated that in determining

5

Greiner's residual functional capacity ("RFC") he had followed a two-step process, beginning with assessing whether there was a medically determinable physical impairment or impairments "shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms." [Id.]. Because this threshold requirement was met, the ALJ moved to the "intensity, persistence, and limiting effects of pain or other symptoms to determine the extent to which they limit the claimant's functioning . . . [Whenever] statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on the entire case record." [Id.].

The ALJ reviewed Greiner's testimony that she was able to sit for only five to eight minutes, could not stand for longer than a couple of minutes, and could not get comfortable as a result of back pain and weakness in her right leg. [Id]. He also noted her statement that she required help to shower and dress on some days, and that she experienced difficulty getting her shirt on over her arms. [Id.]. Her daughter, mother, and friends stated that Claimant experienced difficulty lifting heavy objects, sleeping, walking, getting into and out of a sitting position, and had limited reach. [Id. at p. 24]. Though the ALJ found "that the claimant's medically determinable impairments could be expected to cause the alleged symptoms," he also found that "the claimant's allegations concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the . . . residual functional capacity assessment." [Id].

In his opinion, the ALJ included a detailed summary of the evidence in the medical record. He considered this evidence together with the hearing testimony of the vocational expert that Greiner was capable of returning to her past relevant work, and, in the alternative, was

capable of performing jobs existing in significant numbers in the national economy. The ALJ supported his finding as follows:

> In reviewing the totality of the evidence, it is evident that the claimant failed to be consistently compliant with treatment. She sought additional painkillers while being monitored in pain management and later tested positive for cocaine. Several treatment notes record the claimant's drug seeking behavior and possible tolerance to narcotics. With regard to her cancer treatment, the claimant failed to return for the second course of her chemotherapy, which caused that treatment to be discontinued. Despite non-compliance, scans showed no recurrence of cancer. Although scans of her back showed moderate to severe difficulties, additional surgery was not recommended and the claimant continued treatment with narcotics, which was notably problematic. The claimant testified that she has been capable of living by herself since February of this year, and that she is able to clean her home and go to doctor visits. (Testimony). In summary, the claimant's treatment records, intermittent treatment compliance, and notable drug-seeking behavior fail to support her reports of debilitating symptoms. As a result, the claimant's physical difficulties are adequately accommodated by a limitation to light work with the additional restriction of only occasionally balancing, crawling, stooping, or bending and also an at will sit/stand option.

[Id. at pp. 25-26]. The ALJ then turned to the medical opinion evidence influencing his findings:

> As for the opinion evidence, the opinion of [non-examining physician] Juan Mari-Mayans is given significant weight. Dr. Mari-Mayans opined that the claimant was capable of the full range of light work. [ECF No. 7-9 at pp. 47-66]. For the reasons discussed above, the medical evidence of record supports this finding. However, in giving consideration to notations regarding difficulties with the claimant's right leg, an at will sit/stand option with additional postural limitations is supported.

[Id. at p. 27] (record citation modified). The ALJ then focused on the opinion of Greiner's treating primary care physician, Dr. Young:

> In October 2009, Dr. Young opined that the claimant was essentially incapable of completing an eight-hour workday in that she was capable of sitting less than 2 hours in an 8-hour workday and standing/walking only 1 hour in an 8-hour workday. [ECF No.

7

> 7-10 at pp.1-2]. She also set forth limitations in pushing and pulling with the upper and lower extremities and multiple postural limitations. [Id.]. Considering the factors discussed above, including the claimant's non-compliance with treatment, drug-seeking behavior, and the examination findings of both Dr. Young and the other physicians of record, Dr. Young's conclusions are not supported by the record evidence and thus are given little weight.
>
> . . . .
>
> In sum, the above residual functional capacity assessment is supported by the claimant's treatment records, intermittent treatment compliance, and notable drug-seeking behavior. Notably, records indicate that the claimant's cancer has resolved. The residual functional capacity is further supported by the opinion of Dr. Mari-Mayans.

[Id.] (internal citations modified). The ALJ recognized that if the limitations noted by Dr. Young were controlling, they would require a finding of disability.

**Discussion**

Medical Exhibits Not Available to Dr. Mari-Mayans

Greiner alleges first that the ALJ erred in according substantial weight to the opinion of Dr. Mari-Mayans. This source was a non-examining physician who lacked the opportunity to examine ten medical exhibits "comprising more than 500 pages of the administrative transcript became part of the record in this case, including the . . . opinion of Dr. Young, and Dr. Young's office notes, . . ." [ECF No. 13 at pp. 5-6]. Claimant case, cites case law for the proposition that it is improper for the ALJ "to rely upon outdated non-examining assessments from a state agency source who had not seen most of the relevant evidence." [Id. at p. 7]. This not a universal rule. As the United States Court of Appeals for the Third Circuit observed in its decision in Chandler v. Comm'r, 667 F.3d 356, 361 (3d Cir. 2011):

> [B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the

> ALJ hearing and a decision. The Social Security regulations impose no limit on how much time may pass between a report and the decision in reliance on it. Only where "additional medical evidence is received that *in the opinion* of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96-6p (July 2, 1966) (emphasis added). The ALJ reached no such conclusion in this case.

[Id.] (footnote omitted). The same is true here.

The ALJ's Reliance on the Report of Dr. Mari-Mayans

Claimant contends that the ALJ erred in formulating his residual functional capacity ("RFC") by crediting the report of consulting physician, Dr. Mari-Mayans, rather than the report of treating physician, Dr. Young. "[I]t is well established that the opinions of a doctor who has never examined a patient 'have less probative force as a general matter, than they would have if the doctor had treated or examined him.'" Brewster v. Heckler, 786 F.2d 581, 583-84 (3d Cir. 1986) (quoting Podeworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)). A basic tenet of disability determinations is that the ALJ accord the opinion of a treating physician great weight, particularly "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). "Where, as here, the opinion of a treating physician conflicts with that of a non-treating or non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 255 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Claimant cites case law holding that "[f]orm reports in which a physician's only obligation is to check a box or fill in a blank are weak evidence at best." Claussen v. Chater, 950 F. Supp. 1287, 1296 n. 10) (D. N.J. 1996) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.

9

1993)). The United States Court of Appeals for the Third Circuit has held, however, that in certain circumstances a "check the box form may support a denial of benefits." Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). "Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d) (1) - (2), 'the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity [.]'" Chandler, 667 F.3d at 361 (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

"[A] statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990)). "State agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361 (citing SSR-96-6p) ("Because state agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s).")).

Greiner's argument relating to the ALJ's consideration of Dr. Mari-Mayans' opinion closely parallels that raised by the claimant in Carnahan v. Astrue, Civ. Action No. 11-7847, 2012 WL 4205613 (E.D. Pa. Sept. 20, 2012). There, as here, the ALJ discounted the opinions of treating physicians in favor of the conclusion of a state agency non-examining physician. The Court in Carnahan found that the ALJ's reliance on the finding of the state agency physician was supported by substantial evidence. The ALJ "considered and evaluated conflicting medical evidence in the record, including the opinions of [the claimant's] treating physicians . . . [and] provided specific reasons – reasons adequately supported by the record – for discounting the opinions of [the] treating physicians in favor of [the state agency physician]." Id. at *9. As was

10

the case in both Carnahan and Chandler, the ALJ in this matter did not merely "rubber stamp" the state agency physician's conclusions, but, in view of the observations in the record regarding Greiner's difficulties with her right leg, he added a number of postural limitations not included in Dr. Mari-Mayans' assessment. [ECF No. 7-2 at pp. 25-26].

The Court has reviewed the medical record in its entirety, and finds that the ALJ had reasonable grounds for questioning the RFC assessment of Dr. Young. In so finding, the Court recognizes that Claimant has experienced significant difficulty with her back, resulting in unsuccessful surgery and the need for pain control. She also underwent a partial mastectomy for breast cancer, thereafter contracting at least mild infection and suffering painful aftereffects.

The record is, however, replete with references to her treating physicians' observations that Greiner's complaints of pain were out of proportion to the objective clinical data, and that she was engaged in drug seeking behavior. In fact, the vast majority of the material contained in Dr. Young's records deals with Greiner's repeated requests, over a period of years, for narcotics and anti-anxiety medications. Though there is evidence that Greiner was experiencing some improvement, her requests for more and stronger drugs persisted. Yet, on October 19, 2010 Greiner sought a prescription for a [non-narcotic] Lidocaine patch because it "really helped." [Id. at p. 3]. In March, 2010, Dr. Young noted "a lack of significant motor deficits." [Id. at p. 28]. In July 2009, Dr. Young noted that Greiner's "pain complaints [had] always been out of proportion to her illness." [Id. at p. 31]. Claimant seemed to be tolerating her back pain better, and was ambulatory without as much active spasm. "There is a concern that she exhibits drug seeking behavior . . . ." [Id.]. Greiner "asked for Percocet from her oncologist without revealing that she was already taking chronic pain medications." [Id. at p. 32]. In May 2009, the oncologist wrote that Greiner's "real problem . . . [was] her need for narcotics." [ECF No. 7-16 at p. 7].

The ALJ paints a very clear picture of the the record documenting Claimant's treating physicians' view of her medication issues. He relies on that record both to explain why he did not credit the extreme RFC limitations formulated by Dr. Young, and to explain why he failed to find the testimony bearing on Greiner's limitations fully credible. There is no doubt that the ALJ was on solid ground in tying his credibility determination to the evidence relating to Claimant's relationship with opioids. The ALJ's rejection of Dr. Young's finding that Greiner was "completely precluded from any meaningful work activity whatsoever . . . was justified even in light of the treating physician rule." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). See Poppa v. Astrue, 569 F.3d 1167, 1172 (10th Cir. 2009) (finding sufficient record evidence to support ALJ's determination that claimant's credibility was compromised by drug seeking behavior); Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) (upholding ALJ's conclusion that claimant undermined his credibility when he received a regimen of pain medication from two different doctors . . ."); Granger v. Astrue, Civil Action No. 11-3928, 2012 WL 1392567 at *12 (E.D. Pa. 2012) (finding that ALJ properly considered record evidence of drug seeking behavior in evaluating credibility of claimant).

### III. CONCLUSION

The Court finds Claimant's allegations of error on the part of the Commissioner to be without merit, concluding that the liberal substantial evidence test is satisfied in this case. Thus, it is recommended that the Motion for Summary Judgment filed by the Commissioner [ECF No. 14] be granted, and that the Motion for Summary Judgment filed by the Claimant [ECF No. 11] be denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must

be filed by July 15, 2013. Failure to file timely objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any response to objections is due July 25, 2013.

July 1, 2013

Respectfully submitted,

Cynthia Reed Eddy
United States Magistrate Judge

cc:  Counsel of Record via CM-ECF